# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

In the matter of:                                    )
                                                     )        Adversary Proceeding
FRIEDMAN'S, INC., et al.,                            )
(Chapter 11 Case Number <u>05-40129</u>)             )        Number <u>07-4043</u>
                                                     )
                    *Debtor*                         )
                                                     )
                                                     )
                                                     )
ALAN COHEN AS TRUSTEE OF THE                         )
FRIEDMAN'S CREDITOR TRUST                            )
                                                     )
                    *Plaintiff*                      )
                                                     )
                                                     )
v.                                                   )
                                                     )
                                                     )
ERNST & YOUNG, LLP,                                  )
ERNST & YOUNG CORPORATE                              )
FINANCE, LLC (n/k/a Guiliani                         )
Capital Advisors, LLC), and                          )
WEDBUSH MORGAN SECURITIES,                           )
INC.                                                 )
                                                     )
                    *Defendants*                     )

**FILED**
at 3 O'clock & 58 min. P M
Date 5|24|07

Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia

## MEMORANDUM AND ORDER
## ON THE MOTION OF ERNST & YOUNG LLP AND
## ERNST & YOUNG CORPORATE FINANCE LLC
## TO COMPEL ARBITRATION AND STAY ADVERSARY PROCEEDING

The Plaintiff, as Trustee for the Friedman's Creditor Trust (hereinafter, the

Trustee), filed this adversary proceeding against the Defendants on January 12, 2007. *See*

Dckt. No. 1 (January 12, 2007). Defendants Ernst & Young LLP (E&Y), and Ernst & Young Corporate Finance LLC (EYCF) filed a motion to compel arbitration of the Trustee's claims and to stay this adversary. *See* Dckt. No. 3 (January 26, 2007). The Trustee filed a response opposing the motion. *See* Dckt. No. 15 (February 22, 2007). E&Y and EYCF submitted a timely response to the Trustee's arguments. *See* Dckt. No. 25 (March 8, 2007). A hearing on this matter was held on March 30, 2007. After reviewing the factual allegations and legal arguments presented by the parties, I make the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FINDINGS OF FACT

### A. The Friedman's Creditor Trust

The Debtors' plan of reorganization (the Plan) was confirmed on November 23, 2005, and became effective on December 9, 2005. *See* Case No. 05-40129, Dckt. No. 1338 (November 23, 2005). Under the Plan, the Trustee is charged with prosecuting and liquidating on behalf of Class 5 General Unsecured Creditors various causes of action that had been transferred from the Debtors' bankruptcy estate to the Friedman's Creditor Trust. *See* Id., Ex. A, ¶ 11.3(c). It is in this capacity that the Trustee has brought the present adversary proceeding against E&Y and EYCF.

### B. The Debtors' Pre-Petition Relationship with E&Y and EYCF

According to the Trustee's complaint, E&Y provided Friedman's with various pre-petition audit, review, tax, restructuring, valuation, and other related financial

services. *See* Dckt. No. 1, p. 12 (January 12, 2007).  These services included the year-end auditing of Friedman's financial statements for fiscal years 1998 through 2002; the auditing of never-completed restatements of financial statements for fiscal years 2000 through 2002; auditing Friedman's 2003 year-end financial statement; reviewing Friedman's unaudited quarterly financial statements for the years 1998 through the third fiscal quarter of 2000; and preparing federal, state, and local tax returns for the years 1998 through 2003.  *See* Id.  In addition, E&Y provided services to Friedman's in connection with its August 2002 investment of $85 million in Crescent Jeweler's, Inc. (the Crescent Investment), another jewelry retailer that was owned and controlled by some insiders of Friedman's.  *See* Id.

EYCF was retained to provide certain services, primarily valuation services, in connection with audits of Friedman's financial statements for 2001 and 2002 as well as the Crescent Investment. *See* Id., p. 13.  E&Y and EYCF terminated their relationship with Friedman's on January 24, 2005, shortly after the Debtors filed their Chapter 11 petition in this Court. *See* Id., p. 114.

### C. The Trustee's Adversary Proceeding against E&Y and EYCF

In his complaint, the Trustee alleges that E&Y and EYCF committed various actionable acts, omissions, and misrepresentations while providing auditing and financial services to the Debtors during fiscal years 2000 through 2003.  The eleven causes of action asserted by the Trustee against E&Y and EYCF can be summarized as follows:

1)   The Trustee asserts negligence and professional malpractice against E&Y. He contends that E&Y failed in its duty to exercise appropriate care and competence within the professional standards of care. *See* Dckt. No. 1, p. 104 (January 12, 2007). In particular, the Trustee alleges that E&Y failed in its fiduciary duties to provide material information to Friedman's Audit Committee and Board of Directors concerning the proper valuation of Crescent and the potential impact the investment would have on Friedman's liquidity and financial stability. *See* Id., pgs. 105-106. Furthermore, E&Y negligently disregarded the fact that Friedman's financial statements contained numerous material misstatements. *See* Id., p. 105.

2)   The Trustee asserts negligent misrepresentation against E&Y. He contends that E&Y negligently supplied Friedman's independent directors with false information in connection with the Crescent Investment and that the directors reasonably relied on this false information. *See* Dckt. No. 1, p. 107 (January 12, 2007).

3)   The Trustee asserts fraudulent conveyance under O.C.G.A. § 18-2-70 *et seq* against E&Y. He contends that Friedman's paid approximately $5 million to E&Y for audit work that was never fully completed. *See* Dckt. No. 1, p. 108 (January 12, 2007).

4)   The Trustee asserts fraudulent conveyance under 11 U.S.C. § 548 against E&Y. This cause of action arises from the same facts and circumstances as the fraudulent conveyance cause of action under O.C.G.A. § 18-2-70 *et seq*. *See* Dckt. No. 1, p. 109 (January 12, 2007).

5)   The Trustee asserts breach of fiduciary duty against E&Y. He contends that E&Y breached its fiduciary duty by failing to disclose material information concerning the Crescent Investment to Friedman's Board of Directors. *See* Dckt. No. 1, p. 110 (January 12, 2007).

6)   The Trustee asserts aiding and abetting a breach of fiduciary duty against E&Y. He contends that E&Y's actions aided and abetted several members of Friedman's senior management in breaching their own fiduciary duties to Friedman's. *See* Dckt. No. 1, p. 111 (January 12, 2007).

7)   The Trustee asserts fraud and aiding and abetting fraud against E&Y. He contends that E&Y knowingly submitted materially false and misleading financial statements to Friedman's Board of Directors in connection with the Crescent Investment. *See* Dckt. No. 1, p. 112 (January 12, 2007). Furthermore, E&Y knowingly or recklessly aided and abetted the submission of materially false and misleading financial statements to the Friedman's

Board of Directors by various members of Friedman's senior management. *See* Id.

8) The Trustee asserts breach of contract against E&Y. He contends that E&Y breached a June 1, 2004 contract to audit Friedman's financial statements for fiscal year 2003 and to audit Friedman's restatement of its financial statements for fiscal years 2001 and 2002. *See* Dckt. No. 1, p. 113 (January 12, 2007).

9) The Trustee asserts contempt for a violation of the automatic stay provisions of 11 U.S.C. § 362 against E&Y. He contends that E&Y's unilateral termination of its contract with Friedman's on January 24, 2005, was an intentional and/or willful violation of the automatic stay. *See* Dckt. No. 1, p. 114 (January 12, 2007).

10) The Trustee asserts a violation of the Georgia Public Accountancy Act under O.C.G.A. § 43-3-35(f) against E&Y. He contends that at the time it agreed to audit Friedman's restated financial statements for 2000 through 2002 as well as its fiscal year 2003 financial statement, E&Y had no intention of completing such audits. *See* Dckt. No. 1, p. 115 (January 12, 2007).

11) The Trustee asserts negligence and contributory negligence against EYCF. He contends that EYCF failed to exercise ordinary care, skill, and diligence in performing its valuations for the Crescent Investment. *See* Dckt. No. 1, p. 116 (January 12, 2007).

### D. The Arbitration Agreements

E&Y was a party to several pre-petition engagement agreements with Friedman's that contain arbitration clauses. *See* Dckt. No. 3, Ex. 1, Exs. A-D (January 26, 2007). In the September 30, 1999 agreement, the parties agreed that:

> Any controversy or claim arising out of or relating to the services covered by this letter or hereafter provided by us to the Company (including any such matter involving any parent, subsidiary, affiliate, successor in interest, or agent of the Company or of Ernst & Young LLP) shall be

> submitted first to voluntary mediation, and if mediation is
> not successful, then to binding arbitration, in accordance
> with the dispute resolution procedures set forth in the
> attachment to this letter. Judgment on any arbitration
> award may be entered in any court having proper
> jurisdiction.

See Id., Ex. 1, Ex. A.

The Dispute Resolution Procedures attached to the September 30, 1999 agreement state that:

> Any issue concerning the extent to which any dispute is
> subject to arbitration, or concerning the applicability,
> interpretation, or enforceability of these procedures,
> including any contention that all or part of these
> procedures are invalid or unenforceable, shall be governed
> by the Federal Arbitration Act and resolved by the
> arbitrators.

See Id.

Although the wording may not be exactly the same, these provisions appear in the

engagement agreements executed between E&Y and Friedman's on September 21, 2000, July

20, 2001,[1] and June 1, 2004. See Id., Ex. 1, Exs. B-D.

---

[1] As pointed out by the Trustee, the July 20, 2001 engagement agreement was not signed by Friedman's Chief Financial Officer. See Dckt. No. 3, Ex. 1, Ex. C (January 26, 2007). However, the Trustee does not dispute that agents of Friedman's signed the other engagement agreements and that valid agreements existed between E&Y and Friedman's. Cf. Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 854 (11th Cir. 1992) ("The calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of any agreement, including the existence of an agreement to arbitrate.").

*E.  Arguments of the Parties*

E&Y and EYCF contend that in asserting his claims in this adversary proceeding, the Trustee stands in the shoes of Friedman's and is bound by the arbitration clauses to the same extent that Friedman's would be if it had asserted these claims, *see* Dckt. No. 4, p. 6 (January 26, 2007); that due to the provisions of the Dispute Resolution Procedures attached to the engagement agreements, any questions as to the scope and applicability of the arbitration clauses should be reserved for the arbitrators, *see* Id., p. 9; and that there is no inherent conflict between compelling arbitration of the Trustee's claims and the underlying purposes of the Bankruptcy Code that would permit denial of enforcement of the arbitration clauses, *see* Dckt. No. 25, p. 18 (March 8, 2007).

The Trustee argues that he is asserting claims derived from the Bankruptcy Code that are not subject to arbitration. *See* Dckt. No. 15, p. 9 (February 22, 2007).  In addition, as to those claims derived from the Debtors, the Trustee contends that they are beyond the date and scope of the engagement agreements produced by E&Y. *See* Id., pgs. 10-12. Alternatively, if the Court concludes that he is bound by the arbitration clauses of the engagement agreements, the Trustee asks this Court to find an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code and exercise its discretion to deny enforcement of those clauses. *See* Id., p. 14.

## CONCLUSIONS OF LAW

The enforceability of a pre-petition arbitration agreement in bankruptcy has

generated considerable attention and debate. The Eleventh Circuit Court of Appeals has recently weighed in with its own opinion on this issue. *See* Whiting-Turner Contracting Co. v. Elec. Mach. Enterprises, Inc. (In re Elec. Mach. Enterprises, Inc.), 479 F.3d 791 (11th Cir. 2007). Before addressing Whiting-Turner, however, it is important to first review the framework within which it was decided.

### A. Background and Framework

#### i. Enforceability in General

Under the Federal Arbitration Act, an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When faced with a request for the arbitration of a cause of action, federal courts are to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Initially, the United States Supreme Court appeared reluctant to require the enforcement of arbitration agreements between private parties. *See* Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (denying the defendants' request to stay the prosecution of a civil securities claim pending arbitration pursuant to their agreement with the plaintiff). The Court changed its course, however, in Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987):

> The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes.

> Id. at 226-27 (citations and quotations omitted).

In what has become known as the McMahon test, the party seeking to avoid enforcement of an otherwise applicable arbitration provision must demonstrate that there is an "irreconcilable conflict" between the Federal Arbitration Act and the underlying purpose of the other federal statute in question. Id. at 239; *see also* Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 485-86, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (affirming the lower court's decision to enforce an arbitration agreement after determining that the arbitration process did not "inherently undermine" the rights afforded by various federal securities acts). The Federal Arbitration Act is evidence of a strong federal policy favoring the enforcement of arbitration agreements. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Therefore, the party opposing arbitration bears the burden of demonstrating that Congress did not intend to waive judicial remedies for the particular rights at issue. McMahon, 482 U.S. at 227.

### ii. Is the Arbitration Clause "Otherwise Applicable?"

The seminal decision in applying the <u>McMahon</u> test to pre-petition arbitration clauses in bankruptcy is the Third Circuit's decision in <u>Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 885 F.2d 1149 (3d Cir. 1989). *See* <u>In re Nat'l Gypsum Co.</u>, 118 F.3d 1056, 1066 (5th Cir. 1997) (stating that the <u>Hays</u> decision "makes eminent sense"). In <u>Hays</u>, a Chapter 11 trustee brought various federal and state causes of action, including claims under the Bankruptcy Code, against the defendant. Pointing to a pre-petition agreement between it and the debtor requiring the arbitration of controversies arising out of their brokerage relationship, the defendant moved to compel arbitration of the trustee's claims. The district court denied the defendant's motion.

Before applying the <u>McMahon</u> inherent conflict test, the Third Circuit analyzed whether the arbitration agreement was "otherwise applicable" to the dispute. The court stated that "the trustee-plaintiff stands in the shoes of the debtor for the purposes of the arbitration clause and that the trustee-plaintiff is bound by the clause to the same extent as would the debtor." <u>Hays</u>, 885 F.2d at 1153. The Third Circuit emphasized that "it is the *parties* to an arbitration agreement who are bound by it and whose intentions must be carried out." <u>Id.</u> at 1155 (emphasis added) (citing <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 625, 105 S.Ct. 3346, 3352, 87 L.Ed.2d 444 (1985)). As a result, the trustee was bound to arbitrate most of the claims because they were derivative of

one who was a party to the arbitration agreement, the debtor.[2]  Hays, 885 F.2d at 1154. However, the trustee's two causes of action under 11 U.S.C. § 544(b) were "*creditor* claims that the Code authorizes the trustee to assert on their behalf." Id. at 1155 (emphasis added). As to these Code-created *creditor* claims, Hays concluded that the trustee was not standing in the shoes of the debtor so as to be bound by the arbitration agreement. Id. Since the trustee, in asserting creditor claims, was not a successor-party, those claims were not arbitrable. Id.

### iii.  The *Whiting-Turner* Rule

In Whiting-Turner, the Chapter 11 debtor brought a debtor-derived action seeking turnover of money.  The defendant moved to compel arbitration pursuant to its pre-petition agreement with the debtor.  The Eleventh Circuit held that "[i]n general, bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding" and found the action subject to arbitration.  Whiting-Turner, 479 F.3d at 796, 798.  Alternatively, the court concluded that even if the debtor's claim was a core proceeding, there was no evidence of an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code.  Id. at 798-99.  Only "if the bankruptcy court actually makes a sufficient finding that enforcing an arbitration agreement would inherently conflict with the Bankruptcy Code does it have the discretion to deny enforcement of the

---

[2] This concept that an entity or individual will be bound by a pre-petition arbitration agreement if the entity or individual is asserting claims that were derivative of a party to that agreement is consistent with how courts have treated other pre-petition agreements. *See, e.g.*, Furness v. Wright Med. Tech., Inc. (In re Mercurio), 402 F.3d 62 (1st Cir. 2005) (concluding that a Chapter 11 trustee was bound by a pre-petition forum selection clause in asserting a breach of contract claim on behalf of the debtor).

arbitration agreement." Id. at 799.

Thus, Whiting-Turner makes both core and non-core claims subject to arbitration and applied the McMahon inherent conflict analysis to core claims. Because the only claim in that case was debtor-derived, the court did not differentiate between debtor-derived and creditor-based claims as Hays did. Therefore, it is unknown whether the Eleventh Circuit would reject the formulation of Hays and find that Code-based creditor claims asserted by a Chapter 11 trustee or debtor in possession are arbitrable. If the Eleventh Circuit rejected Hays, then arguably all of the claims asserted by the Trustee against E&Y and EYCF would be arbitrable. Nevertheless, this remains an open question, and I find the Hays formulation compelling. Because a party asserting creditor-based claims does not stand in the shoes of the debtor, it is not a party to the arbitration agreement, which renders such claims nonarbitrable. The arbitrability of debtor-derived claims, however, is still subject to the McMahon test.

### B. The Trustee's Debtor-Derived Claims

Of the eleven causes of action asserted by the Trustee against E&Y and EYCF, I conclude that eight are clearly derivative of the Debtors. *See* Dckt. No. 1, pgs. 104-116 (January 12, 2007). Against E&Y, the Trustee has asserted negligence and professional malpractice (cause of action #1); negligent misrepresentation (#2); breach of fiduciary duty (#5); aiding and abetting a breach of fiduciary duty (#6); fraud and aiding and abetting fraud (#7); breach of contract (#8); and a violation of the Georgia Public Accountancy Act (#10).

Against EYCF, the Trustee has asserted a cause of action of negligence and contributory negligence (#11).

On the effective date of the Plan, the Debtors' estates transferred the Trust Assets to the Friedman's Creditor Trust. *See* Case No. 05-40129, Dckt. No. 1338, Ex. A, ¶ 11.2(a) (November 23, 2005). The Trustee is charged with liquidating the Trust Assets. *See* Id., Ex. A, ¶ 11.3(c). Under the Plan, Trust Assets means Trust Claims, which includes:

> any and all Causes of Action against any Person, including, but not limited to, any officer, director, direct or indirect shareholder, lender, attorney, law firm, auditor, accounting firm, accountant or other Person, in any way arising from, in connection with, or relating to the subject matters of the investigation conducted by the Joint Review Committee with respect to any acts, conduct or omissions (i) by the officers and directors occurring on or prior to May 5, 2004, and (ii) occurring at time with respect to any other Person, including, without limitation, in each case, those matters more particular discussed in Section VI.G of the Disclosure Statement.
>
> *See* Id., Ex. A, ¶ 1.136.

Section VI.G of the Debtors' disclosure statement clearly references an investigation into the possibility of pre-petition accounting irregularities as well as the circumstances surrounding the Crescent Investment. *See* Case No. 05-40129, Dckt. No. 903, pgs. 45-50 (August 4, 2005). E&Y is named as the Debtors' auditor in connection with its withdrawal of its audit opinions in connection with previously-filed financial statements. *See* Id., p. 48.

The Trustee's causes of action 1, 2, 5, 6, 7, 8, 10, and 11 arose before the Debtors filed their bankruptcy case in January 2005 and are included in their bankruptcy estate under 11 U.S.C. § 541(a). *See* Jones v. Harrell, 858 F.2d 667, 669 (11th Cir. 1988) ("A trustee in bankruptcy succeeds to all causes of action held by the debtor at the time the bankruptcy petition is filed."); Miller v. Shallowford Cmty. Hosp., Inc., 767 F.2d 1556, 1559 (11th Cir. 1985) (stating that it is "clear" that a "trustee in bankruptcy succeeds to all causes of action held by the debtor at the time the bankruptcy petition is filed," including actions arising from contract). Therefore, as the party asserting these causes of action derived from the Debtors, the Trustee stands in the shoes of the Debtors and is subject to the same defenses that could have been asserted against the Debtors had they brought the causes of action, including exposure to the arbitration clauses. *See* Hays, 885 F.2d at 1154.

As mentioned above, the Trustee argues that the engagement agreements from 1999, 2000, 2001, and 2002 do not cover E&Y's alleged misconduct in later years. *See* Dckt. No. 15, pgs. 10-11 (February 22, 2007). Having concluded that the Trustee's assertion of claims derived from the Debtors makes him a successor-party to the arbitration clauses as to those claims, I also find that any questions or issues concerning the scope and applicability of the arbitration clauses are reserved for the arbitrators. In Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332 (11th Cir. 2005), the court stated that questions concerning the enforceability of an arbitration provision are for the arbitrators to decide where the parties have "clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid." Although the default rule is for a court to determine

the validity of the arbitration clause itself, parties may agree to preempt that rule by reserving the resolution of such issues for the arbitrators. Id. at 1333.

In the present case, the parties agreed to contract around the default rule. In the Dispute Resolution Procedures, Friedman's and E&Y clearly and unmistakably agreed that any issues concerning "the extent to which *any dispute* is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures . . . *shall* be governed by the Federal Arbitration Act and resolved by the arbitrators." Dckt. No. 3, Ex. 1, Ex. A (January 26, 2007) (emphasis added). Since the Trustee is a successor-party to the arbitration clauses with respect to causes of action 1, 2, 5, 6, 7, 8, 10, and 11, any argument that he wants to raise as to the scope or enforceability of the arbitration clauses with respect to those causes of action must be submitted to the arbitrators.

Alternatively, to the extent that this Court should make that determination, I conclude that the language of the arbitration clauses is clear and encompasses these eight claims against E&Y and EYCF. For example, in the September 30, 1999 agreement, Friedman's and E&Y agreed that "*[a]ny controversy or claim* arising out of or relating to the services covered by this letter or *hereafter provided by us to the Company* (including any such matter involving any parent, subsidiary, affiliate, successor in interest, or agent of the Company or of Ernst & Young LLP) shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration." Id. (emphasis added). This language can also be found in the September 21, 2000, July 20, 2001, and June 1, 2004,

agreements. *See* Id., Ex. 1, Exs. B-D. I conclude that these provisions are broad enough to require the arbitration of these eight claims brought by the Trustee, as to any services rendered or claims that arose after September 30, 1999.

### C. Applying the *McMahon* test to the Trustee's Debtor-Derived Claims

I will now address the Trustee's alternate request that I exercise discretion and deny enforcement of these otherwise applicable arbitration clauses. *See* Dckt. No. 15, p. 14 (February 22, 2007). The Trustee contends that the Bankruptcy Code embodies a fundamental interest in adjusting creditors' rights and resolving disputes in one central forum. *See* Id., p. 19. Sending these claims to arbitration, the Trustee argues, will result in inefficient and wasteful piecemeal litigation in possibly three different venues.[3] *See* Id., pgs. 19-20. The Trustee bases this argument on the fact that the September 30, 1999, and September 21, 2000, engagement agreements require arbitration before a panel of the American Arbitration Association, but the June 1, 2004, agreement requires arbitration before a panel of the International Institute for Conflict Prevention and Resolution. *See* Id., p. 19.

A court's discretion in a bankruptcy case to deny the enforcement of an otherwise applicable arbitration provision was addressed in Hays. In that case, with regard to the trustee's debtor-derived claims, the Third Circuit applied the McMahon test. The court

---

[3] Furthermore, the Trustee argues that in prosecuting these claims, the Friedman's Creditor Trust is working with limited resources. *See* Dckt. No. 15, p. 21 (February 22, 2007).

rejected the trustee's argument that the Code's interest in centralized jurisdiction over estate property and avoiding inefficient and duplicative proceedings surpassed Congress's interest in enforcing arbitration agreements. Hays, 885 F.2d at 1157-58 (citing 28 U.S.C. § 1334(b), which confers a district court with original but not exclusive jurisdiction over suits similar to the one brought by the trustee). Furthermore, the court found support in its previous decisions that concluded that bankruptcy-related concerns about delay and cost alone are insufficient to deny enforcement of a forum selection clause. Id. at 1161-62 (citing Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190 (3d Cir. 1983) and In re Diaz Contracting, Inc., 817 F.2d 1047 (3d Cir. 1987)). Therefore, there was no inherent conflict between requiring the arbitration of the trustee's claims and the underlying purposes of the Bankruptcy Code, and the lower court lacked the discretion to deny enforcement of the arbitration agreement. Hays, 885 F.2d at 1162.

The Third Circuit revisited the issue again in In re Mintze, 434 F.3d 222 (3d Cir. 2006). In that case, a Chapter 13 debtor brought a debtor-derivative action in the bankruptcy court to enforce a pre-petition rescission of a loan agreement with a creditor. The creditor moved to compel arbitration pursuant to a pre-petition arbitration agreement with the debtor. The Third Circuit rejected the debtor's argument that application of the McMahon test should be limited to non-core proceedings. Id. at 230. Instead, it concluded that even in a core proceeding, where "an otherwise applicable arbitration clause exists, a bankruptcy court lacks the authority and discretion to deny its enforcement, unless the party opposing arbitration can establish congressional intent, under the McMahon standard, to

preclude waiver of judicial remedies for the statutory rights at issue." Id. at 231. Because the debtor failed to demonstrate how the debtor-derived claims inherently conflicted with the Bankruptcy Code, the court found that the debtor had not met that burden. Therefore, the bankruptcy court had no discretion to deny enforcement of the arbitration provision. *Accord* MBNA America Bank, N.A. v. Hill, 436 F.3d 104, 108 (2d Cir. 2006) (stating that a "bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the Arbitration Act or that arbitration of the claim would 'necessarily jeopardize' the objectives of the Bankruptcy Code.").

In this context, the Eleventh Circuit ruled in Whiting-Turner that "[i]n general, bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding." 479 F.3d at 796. The court also held that if the debtor's claim had been a core proceeding, the McMahon test would be employed to determine if there was an inherent conflict between arbitrating the claim and the underlying purposes of the Bankruptcy Code. Id. at 798-99. Whiting-Turner can be read as requiring the McMahon analysis in core matters while holding that bankruptcy courts categorically lack the discretion to deny the enforcement of arbitration clauses in non-core matters. Nevertheless, it is not necessary to determine whether these claims are core or non-core because I find that there is no inherent conflict between compelling the arbitration of any of

these eight claims and the underlying purposes of the Bankruptcy Code.[4]

I reach this conclusion for three primary reasons. First, the United States Supreme Court has determined that in cases involving both arbitrable and nonarbitrable claims, a court is to enforce an agreement between the parties and "not substitute its own views of economy and efficiency for those of Congress." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (quotations omitted). Rather, the arbitrable claims are to be sent to arbitration, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." Id.; *see also* Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1117 (11th Cir. 2001) (citing Dean Witter and refusing to endorse the district court's suggestion that arbitration was inappropriate when it would inefficiently result in bifurcated proceedings).

The general rule that courts are to enforce arbitration agreements despite the possibility that such an action would result in inefficient litigation in multiple venues has been applied to bankruptcy cases. *See, e.g.*, In re Mor-Ben Ins. Markets Corp., 73 B.R. 644, 647-48 (B.A.P. 9th Cir. 1987) (requiring the arbitration of claims concerning amounts due to the debtor despite the possibility that such a move would result in fragmented litigation in numerous arbitration proceedings); Bezanson v. Consol. Constructors & Buildings (In re

---

[4] Pursuant to McMahon, a court may refuse to enforce an arbitration clause if permitted by the text or legislative history of the federal statute in question. The Eleventh Circuit has concluded, however, that there is no evidence in the text or legislative history of the Bankruptcy Code indicating Congress's intent to except the Code from the Federal Arbitration Act. Whiting-Turner, 479 F.3d at 796. Therefore, the only factor of the McMahon test to be applied in connection with bankruptcy is whether there is an inherent conflict.

P&G Drywall and Acoustical Corp.), 156 B.R. 704, 706 (Bankr. D. Me. 1993) ("[R]eferral to arbitration is justified notwithstanding the fact that it may result in piecemeal litigation."); In re Chorus Data Sys., Inc., 122 B.R. 845, 852 (Bankr. D.N.H. 1990) ("The Supreme Court has made it unmistakably clear that such qualitative judgments about the desirability of arbitration procedures are not a proper factor in deciding whether to exercise discretion to refuse to enforce an arbitration provision."). Therefore, the possibility of piecemeal litigation standing alone is a suspect rationale for finding an inherent conflict between arbitration and the purposes of the Bankruptcy Code. *See* Id. ("[T]he fact that arbitration may not be as 'efficient' or as 'expeditious' has been held not to *per se* justify refusal to enforce an arbitration clause even in the bankruptcy context.").

Second, there is no evidence that allowing the arbitration of the Trustee's claims will jeopardize any central purpose of the Bankruptcy Code. As stated in Whiting-Turner, the traditional purpose of the bankruptcy court is "modifying the rights of creditors who make claims against the bankruptcy debtor's estate." 479 F.3d at 798; *see also* Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (stating that a central purpose of the Bankruptcy Code includes "a procedure by which certain insolvent debtors can reorder their affairs" and "make peace with their creditors"); Begier v. Internal Revenue Service, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code."). As described above, the Debtors' Plan was voted on by their creditors, confirmed on November 23, 2005, and became effective December 9, 2005. As a result, the Debtors have emerged from Chapter 11, and

by confirmation of the Plan, the central purposes of the Bankruptcy Code have been accomplished: Creditors' rights have been modified; the Debtors' businesses have been reorganized; and equitable future distributions to various classes of creditors have been assured. Permitting the arbitration of these eight claims cannot affect the Debtors' reorganization, impact the relative rights of creditors, or unravel any fundamental purpose of the Code.

The absence of any conflict with a central purpose of the Code in this case is best illustrated by the few fact patterns where an inherent conflict was found. In <u>Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co., L.L.C.)</u>, 403 F.3d 164, 170 (4th Cir. 2005), the court determined that arbitration of the issue of whether a $10 million advance was to be treated as either debt or equity "would have substantially interfered with the debtor's efforts to reorganize." The court found that resolution of this issue was central to the formulation of the debtor's plan of reorganization and that the bankruptcy court could ensure an expedited resolution of that pivotal issue. <u>Id.</u> In <u>In re U.S. Lines, Inc.</u>, 197 F.3d 631 (2d Cir. 1999), the court concluded that it was necessary to resolve pre-petition insurance claims in the bankruptcy court because only in that forum could the debtor avoid compliance with a pay-first provision. Its enforcement could have resulted in some creditors being overpaid and others underpaid. Since litigation in the non-bankruptcy forum could have resulted in an inequitable distribution to creditors, the court found an inherent conflict with the Bankruptcy Code. <u>Id.</u> at 640-41. In <u>Gandy v. Gandy (In re Gandy)</u>, 299 F.3d 489 (5th Cir. 2002), the court determined that the pre-confirmation arbitration of the debtor's claims

would conflict with the purposes of the Code because the bankruptcy causes of action predominated, and only the bankruptcy court could exercise extraterritorial jurisdiction over asserts transferred to a foreign country. *See also* In re Nat'l Gypsum Co., 118 F.3d 1056, 1070-71 (5th Cir. 1997) (refusing to compel arbitration after finding that the action involved the bankruptcy court's ability to construe its own order, was restricted strictly to bankruptcy issues under 11 U.S.C. § 524, and that to turn the enforcement of bankruptcy court orders over to arbitrators would conflict with the Code).

There is no similar frustration of any essential Code purpose in this case. Sending the Trustee's claims to arbitration will not substantially interfere with the Debtors' efforts to formulate a plan because the Plan was confirmed on November 23, 2005, and has been effective since December 9, 2005. There is no issue of possible inequitable distribution because the pro-rata rights of Class 5 creditors are fixed by the confirmed Plan. *See* Pardo v. Akai Elec. Co. Ltd. (In re Singer Co. N.V.), 2001 WL 984678, *6 (S.D.N.Y. 2001) (requiring arbitration after determining that arbitration did not inherently conflict with the Code as it did not impact the allocation of assets among creditors). In addition, there is no other extraordinary factor present in this case, such as the possibility of litigation in a foreign jurisdiction. *See* Gandy, 299 F.3d at 498-99.

Third, these are not unique or special claims. Rather, they are state law claims for negligence, professional malpractice, breach of contract, and fraud. It is not at all evident that these are the types of claims that require special insight or expertise or that

arbitrators lack the ability and competency to adjudicate these claims.  *See* <u>Hill</u>, 436 F.3d at 110 (finding that a bankruptcy court was not uniquely able to interpret and enforce a claim under former 11 U.S.C. § 362(h) such that arbitration of the claim would inherently conflict with the Bankruptcy Code).

While arbitration would deviate from the Code's general goal of resolution of all issues in one centralized forum, that factor standing alone is insufficient to find an inherent conflict.  Indeed, if I concluded otherwise, the exception would swallow the rule because that factor is present in every bankruptcy case.  There is no basis for finding that of all the federal statutes, the Bankruptcy Code alone stands immune from the Federal Arbitration Act.  Because there is no inherent conflict, I lack the discretion to deny enforcement of an arbitration provision to which the Trustee is bound as a successor to the Debtors.  Therefore, as to causes of action 1, 2, 5, 6, 7, 8, 10, and 11, E&Y and EYCF's motion to compel arbitration will be granted.

### D.  The Trustee's Code-Created Claims

I now turn to the Trustee's three remaining causes of action.  These include claims for fraudulent conveyance under O.C.G.A. § 18-2-70 *et seq.* (cause of action #3), fraudulent conveyance under 11 U.S.C. § 548 (#4), and contempt under 11 U.S.C. § 105 for a violation of the automatic stay (#9).  The Trustee contends that unlike the claims addressed in subsections B and C, these three causes of action are creditor claims derived from the

Bankruptcy Code and not from the Debtors. *See* Dckt. No. 15, pgs. 8-9 (February 22, 2007).[5]

Therefore, the Trustee argues that he is not a successor-party and cannot be bound by the

arbitration clauses. *See* United Steelworkers of America v. Warrior and Gulf Navigation Co.,

363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ("[A]rbitration is a matter of

contract and a party cannot be required to submit to arbitration any dispute which he has not

agreed so to submit."). I reiterate my holding that non-derivative creditor claims are

generally not arbitrable. *See supra* at 12.

        The Trustee is correct in contending that these claims are not debtor-derived

because a fraudulent conveyance claim cannot be brought by a debtor-transferor. *See* Parker

v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004) ("Thus, a trustee, as the

representative of the bankruptcy estate, is the proper party in interest, and is the only party

with standing to prosecute causes of action belonging to the estate."); Wolf v. Degner, 243

Neb. 702, 706, 502 N.W.2d 440 (1993) ("Thus, under the Uniform Fraudulent Conveyance

Act, only a creditor has standing to bring an action to set aside an allegedly fraudulent

conveyance.") (citations omitted). The Uniform Fraudulent Transfer Act (UFTA) and 11

U.S.C. § 548 permit only third parties, such as creditors and trustees, to unwind transactions

that would otherwise be legal and binding between the transferor and the transferee. *See* In

re First Alliance Mortg. Co., 471 F.3d 977, 1008 (9th Cir. 2006) ("The purpose of fraudulent

---

[5] In his brief in opposition to E&Y and EYCF's motion to compel, the Trustee initially only listed his fourth and ninth claims as derived from the Code rather than from the Debtors. *See* Dckt. No. 15, p. 9 (February 22, 2007). At the March 30, 2007, hearing, however, the Trustee expanded his argument to include his third claim as a Code-based claim. *See* Dckt. No. 40 (March 30, 2007).

transfer law is to protect creditors from last-minute diminutions in the pool of assets in which they have interests.") (quotations omitted). The plaintiff in a fraudulent conveyance action is not subject to defenses that could be raised against the debtor. *See* Terlecky v. Abels, 260 B.R. 446, 453 (S.D. Ohio 2001) (concluding that a trustee in bringing claims under 11 U.S.C. §§ 544(b) and 548 did not stand in the shoes of the debtors and therefore was not subject to the defense of *in pari delicto* even though the debtors knowingly and willfully participated in the fraudulent transfers).

However, E&Y and EYCF assert that these causes of action are breach of contract or professional negligence claims that have been disguised as bankruptcy claims and therefore are arbitrable debtor-derived claims. *See* Dckt. No. 25, pgs. 10-11 (March 8, 2007). As pled, the Trustee asserts Code-derived creditor claims. Citation of the Code, however, does not conclusively establish that the claims are in fact creditor claims derived from the Code. *See* Trefny v. Bear Stearns Sec. Corp., 243 B.R. 300, 320-23 (S.D. Tex. 1999) (analyzing the trustee's turnover and fraudulent conveyance claims under the Bankruptcy Code to conclude that no turnover claim existed, that the fraudulent conveyance claim had been improperly characterized, and that the trustee was bound by the debtor's pre-petition arbitration agreements). If a court's determination of whether a party's claim is a creditor remedy derived from the Code or from a debtor turned solely on the party's characterization of the claim in its pleadings, there would be nothing to stop trustees or debtors in possession from masquerading claims as being derived from the Code in an attempt to avoid otherwise applicable pre-petition agreements made by the debtor. Indeed, E&Y and EYCF have raised

the argument that such an attempt has been made here.

The Trustee's third and fourth causes of action allege a fraudulent conveyance under O.C.G.A. § 18-2-70 *et seq.* and 11 U.S.C. § 548, respectively. According to the Trustee, Friedman's hired E&Y on June 1, 2004, to audit its financial statements for fiscal years 2000-2003 as well as to provide audit opinions on its restated financial statements for fiscal years 2000, 2001, and 2002. *See* Dckt. No. 1, pgs. 108-09 (January 12, 2007). The Trustee alleges that as of August 27, 2002, Friedman's was insolvent as its debts were greater than its assets. *See* Id. The Trustee claims that Friedman's did not receive reasonably equivalent value when E&Y did not deliver the audit after approximately 14 months of work despite payments by Friedman's of nearly $5 million. *See* Id.

E&Y's argument that these claims should be re-characterized as ordinary breach of contract or professional malpractice claims is not persuasive. First, the Trustee has pled the elements of a fraudulent conveyance claim under both Georgia law and the Bankruptcy Code,[6] and E&Y has not shown that the Trustee has failed to state a claim under the applicable fraudulent conveyance statutes.

---

[6] At the March 30, 2007, hearing, the Trustee argued that his ability to bring the fraudulent conveyance claim under Georgia law arose pursuant to the authority granted by 11 U.S.C. § 544(b)(1), which permits a trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable" under the Code. Georgia's adoption of the UFTA became effective on July 1, 2002. *See* O.C.G.A. § 18-2-70 *et seq.* Under O.C.G.A. § 18-2-75(a), a transfer by a debtor is fraudulent as to a creditor holding a pre-transfer claim against the debtor if "the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Similarly, under 11 U.S.C. § 548(a)(1)(B), a trustee may avoid a transfer of the debtor in property made within one year of the petition date if the transfer was for less than reasonably equivalent value and the debtor was insolvent on the transfer date or became insolvent as a result of the transfer.

Second, the fact that a fraudulent conveyance claim may arise out of a common set of facts in which the elements of a breach of contract claim might also exist does not prevent the Trustee from pleading both claims in his complaint. *See* Brookhaven Landscape & Grading Co., Inc. v. J.F. Barton Contracting Co., 676 F.2d 516, 523 (11th Cir. 1982) (citing Federal Rule of Civil Procedure 8(e)(2) for the proposition that "[l]itigants in federal court may pursue alternative theories of recovery, regardless of their consistency"); *see also* Cromeens, Holloman, Sibert, Inc. v. AB Volvo, 349 F.3d 376, 397 (7th Cir. 2003) ("Under [the doctrine of pleading in the alternative], a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative. Once a valid contract is found to exist, quasi-contractual relief is no longer available.").

Here, the facts arguably support both a breach of contract action and a fraudulent conveyance action. Because the Trustee is permitted to pursue alternative theories and since both the elements of and defenses to a breach of contract action and a fraudulent conveyance action are different, I reject the argument that the Trustee is manufacturing bankruptcy jurisdiction. I hold that these claims, in substance as well as in form, are properly regarded as Code-derived creditor claims and are not arbitrable. 11 U.S.C. §§ 544(b) and 548 grant causes of action to the "trustee." Under the Bankruptcy Code, a debtor in possession has the same powers and duties of a trustee. 11 U.S.C. § 1107(a). Just as Hays found that a trustee was not a party to a debtor's pre-petition arbitration agreements in bringing creditor claims under 11 U.S.C. § 544, *see* 885 F.2d at 1155, I conclude that a

debtor in possession bringing avoidance actions under 11 U.S.C. §§ 544 and 548 on behalf of creditors is not asserting debtor-derived claims and is not a successor-party to a debtor's pre-petition arbitration agreements. *See* Astropower Liquidating Trust v. Xantrex Tech., Inc. (In re Astropower Liquidating Trust), 335 B.R. 309 (Bankr. D. Del. 2005) (concluding that a liquidating trust could not be bound by arbitration and forum selection clauses contained in the debtor's various pre-petition agreements with respect to its Code-derivative fraudulent transfer claims); Terlecky, 260 B.R. at 453 (finding that in bringing fraudulent conveyance claims under state law, "the Trustee stands in the place of a creditor who would have standing to pursue a fraudulent conveyance action").[7]  Having been assigned the fraudulent conveyance actions under the Bankruptcy Code that the debtors in possession could have brought on behalf of and for the benefit of their creditors, the Friedman's Creditor Trust is not a party to any arbitration agreement between E&Y and Friedman's.  Therefore, E&Y and EYCF's motion to compel the arbitration of causes of action three and four will be denied.

The final Trustee claim to address is his ninth cause of action for contempt under 11 U.S.C. § 105 for a violation of the automatic stay.  According to the Trustee, E&Y entered into a contract on June 1, 2004, to provide Friedman's with an audit and report on its consolidated financial statements for fiscal year 2003 and to audit and report on its restated financial statements for fiscal years 2001 and 2002. *See* Dckt. No. 1, p. 114 (January

---

[7] The Terlecky court stated that "[a]ctions brought by bankruptcy trustees fall into two general categories. The first involves claims brought by the trustee as successor to the debtor's interest. The second involves claims brought under one or more of the trustee's avoiding powers." 260 B.R. at 453. This formulation is consistent with Hays. *See* 885 F.2d at 1155.

12, 2007). After Friedman's filed its Chapter 11 petition, an E&Y audit partner notified Friedman's that E&Y would not complete the services called for under the June 1, 2004 contract. *See* Id. The Trustee alleges that E&Y was aware that the automatic stay provisions of 11 U.S.C. § 362 were in effect when it terminated its contract with Friedman's. *See* Id. Due to E&Y's post-petition unilateral termination, the Trustee asserts that Friedman's and its creditors have suffered actual damages, including attorneys' fees. *See* Id. at 115. The Trustee requests relief, including compensatory damages, pursuant to this Court's contempt powers under 11 U.S.C. § 105. *See* Id.

Similar to its characterization of the Trustee's fraudulent conveyance claims, E&Y asserts that the Trustee's ninth cause of action is a breach of contract action masquerading as a Bankruptcy Code violation. *See* Dckt. No. 25, p. 11 (March 8, 2007). E&Y claims that the Trustee has not cited any subsection of 11 U.S.C. § 362 for his "dubious allegation" that a stay violation occurred. *See* Id. Furthermore, E&Y argues that it would have had to obtain this Court's approval to render post-petition services. *See* Id. Finally, it points to the fact that the contract between E&Y and Friedman's was rejected by the Debtors' Plan and that the automatic stay is no longer in effect. *See* Id.

In beginning my analysis of the Trustee's ninth cause of action, the Eleventh Circuit's decision in Jove Eng'g, Inc. v. Internal Revenue Service is instructive. 92 F.3d 1539 (11th Cir. 1996). In that case, the court clearly stated that "[11 U.S.C. § 105(a)] grants courts independent statutory powers to award monetary and other forms of relief for

automatic stay violations to the extent such awards are 'necessary or appropriate' to carry out the provisions of the Bankruptcy Code." Id. at 1554.

A non-debtor's post-petition unilateral termination of an executory contract may constitute a violation of the automatic stay. In Computer Communications, Inc. v. Codex Corp. (In re Computer Communications, Inc.), 824 F.2d 725 (9th Cir. 1987), the court found the provisions of the automatic stay to be broad enough to preclude the non-debtor's termination of its contract with the debtor. The Fifth Circuit reached a similar result in Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.), 440 F.3d 238 (5th Cir. 2006). In finding that the executory contract between the two parties was property of the debtor's estate, the court stated that "a party with an interest in an executory contract or lease must come before the bankruptcy court to move for a modification or lift of the stay under [11 U.S.C. § 362(d)] in order to effect the terms of an ipso facto clause under [11 U.S.C. § 365(e)(2)(A)]."[8] Id. at 252. The conclusions by the Ninth and Fifth Circuits have been echoed by lower courts as well. See, e.g., In re Bd. of Directors of Compania General de Combustibles S.A., 269 B.R. 104, 113 (Bankr. S.D.N.Y. 2001) ("Under the Bankruptcy Code, absent a specific provision, a debtor has until confirmation of a plan, and in some cases beyond to either assume or reject an executory contract. During such time a creditor is ordinarily barred by the automatic stay from terminating the contract.") (citations omitted);

---

[8] The court went on to state that "the automatic stay prohibited [the non-debtor] from terminating the Agreement. Even when [11 U.S.C. § 362(e)(2)(A)] will ultimately permit a nondebtor party to terminate an executory contract by virtue of the combined effect of [11 U.S.C. § 365(e)(2)(A)], applicable law, and an ipso facto clause, the nondebtor party must seek relief from the stay before the bankruptcy court under [11 U.S.C. § 362(d)]." 440 F.3d at 252-53.

In re Redpath Computer Services, Inc., 181 B.R. 975, 978 (Bankr. D. Ariz. 1995) ("An executory contract that is property of the estate can only be terminated after a grant of relief from stay.").

There is a period of time between the filing of a bankruptcy case and the assumption or rejection of an executory contract, the purpose of which is to allow the trustee a reasonable amount of time to determine whether assumption or rejection would benefit the debtor's reorganization. *See* In re Whitcomb & Keller Mortg. Co., Inc., 715 F.2d 375, 379 (7th Cir. 1983). Although the Bankruptcy Code does not describe the rights and obligations of parties during this "limbo period," courts have concluded that the contracts remain in existence and are "enforceable by the debtor but not against the debtor." United States ex rel. United States Postal Serv. v. Dewey Freight Sys., Inc., 31 F.3d 620, 624 (8th Cir. 1994); *see also* In re FBI Distribution Corp., 330 F.3d 36, 43 (1st Cir. 2003) ("Although during the Chapter 11 proceeding a prepetition executory contract remains in effect and enforceable against the nondebtor party to the contract, the contract is unenforceable against the debtor in possession unless and until the contract is assumed."). In a previous case, I reached the same conclusion. *See* In re Travelot Co., 286 B.R. 462, 466 (Bankr. S.D. Ga. 2002) (Davis, J.) ("During the pre-assumption period, although non-debtors are required to perform in accordance with a contract, the contract's terms are temporarily unenforceable against the debtor.") (citations and quotations omitted).

Once they filed their Chapter 11 petition, the Debtors as debtors in

possession became responsible for representing the interests of the bankruptcy estate. *See* Johnson v. Wasserman (In re Int'l Yacht and Tennis, Inc.), 922 F.2d 659, 661 (11th Cir. 1991) ("A debtor-in-possession in a Chapter 11 case has the same rights and duties as a trustee."). As Chapter 11 debtors in possession, the Debtors never agreed to nor assumed the engagement agreements between E&Y and Friedman's, including any agreements concerning arbitration. *See* Gordon Sel-Way, Inc. v. United States (In re Gordon Sel-Way, Inc.), 270 F.3d 280, 290 (6th Cir. 2001) ("The debtor-in-possession is considered to be a separate legal entity from the debtor himself."); Velikopoljski v. Fl. Nat'l Bank (In re Velikopoljski), 54 B.R. 534, 536 n.1 (Bankr. S.D. Fla. 1985) ("A debtor in possession is an entity distinct from the debtor and has all the rights and powers of a trustee in bankruptcy irrespective of any notice to or knowledge of the debtor.").

The debtors in possession had until confirmation of the Plan on November 23, 2005, to assume or reject their executory contracts, including the engagement agreements with E&Y. *See* 11 U.S.C. § 365(d)(2). When E&Y unilaterally terminated its engagement agreement with Friedman's, a potential cause of action arose in favor of the debtors in possession for a violation of the automatic stay. *See* Computer Communications, 824 F.2d at 730-31; Bonneville Power Admin., 440 F.3d at 251-52. Having been assigned that cause of action by the debtors in possession, the Trustee is not precluded from bringing the stay violation claim. While these actions may also implicate a breach of contract claim, they arguably triggered a purely Code-created cause of action, which is not merely a debtor-derived claim masquerading as an independent claim. As a result, I conclude that the Trustee

as representative of the Friedman's Creditor Trust is not a party to any arbitration agreement between E&Y and Friedman's, and his ninth cause of action is nonarbitrable.

### E.  E&Y and EYCF's Stay Request

The last matter to address is E&Y and EYCF's request for a stay of this adversary proceeding pending the completion of the arbitration process. *See* Dckt. No. 4, p. 13 (January 26, 2007).  Under the Federal Arbitration Act, a court shall stay an action "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration" under a valid arbitration clause. 9 U.S.C. § 3.  As to the Trustee's claims against E&Y and EYCF that are arbitrable, a stay is mandatory. *See* <u>Klay v. All Defendants</u>, 389 F.3d 1191, 1204 (11th Cir. 2004).  Therefore, E&Y and EYCF's motion to stay the Trustee's eight causes of action discussed in subsections B and C pending the completion of the arbitration process will be granted.

As for the Trustee's three nonarbitrable claims, however, a stay is not mandatory but rather a matter of discretion. *See* <u>Id.</u> at 1204 ("When confronted with litigants advancing both arbitrable and nonarbitrable claims, however, courts have discretion to stay nonarbitrable claims.").  Where it is feasible to proceed with the litigation of nonarbitrable claims, courts will generally not enter a stay. <u>Int'l Fidelity Ins. Co. v. BMC Contractors, Inc.</u>, 2007 WL 128813, *3 (M.D. Ga. 2007) (citing <u>Klay</u>, 389 F.3d at 1204).  A stay may be granted, however, to avoid duplicative proceedings or a decision in one proceeding that will have a preclusive effect on the other. <u>BMC Contractors</u>, 2007 WL 128813, at *3.  In

addition, a stay may be desirable where completion of the arbitration may resolve, "or at least shed some light on," the nonarbitrable issues and claims remaining before the court. Volkswagen of America, Inc. v. Sud's of Peoria, Inc., 474 F.3d 966, 972 (7th Cir. 2007).

While cognizant of the risk of duplicative proceedings, I also recognize the desirability of bringing to a conclusion all the litigation, both arbitrable and nonarbitrable. To expedite that finality, I conclude that the Trustee's nonarbitrable claims will not be stayed until discovery is completed, unless the parties stipulate to hold discovery in abeyance. Permitting discovery will allow the parties to have nonarbitrable issues ready for trial, if necessary, immediately upon completion of the arbitration. At the same time, however, staying the trial of these claims pending the completion of the arbitration will reduce the possibility of inconsistent results or overlapping findings. Finally, this decision leaves open the possibility that further proceedings during arbitration or discovery in this court might facilitate a global settlement and resolution of the entire adversary between the parties. Therefore, E&Y and EYCF's motion to stay the Trustee's causes of actions 3, 4, and 9 will be denied until the close of discovery unless the parties present a stipulation to stay the action earlier.

## O R D E R

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that E&Y and EYCF's motion to compel arbitration of the Trustee's causes of action 1, 2, 5, 6, 7, 8, 10, and 11 is GRANTED. The motion to compel arbitration of the Trustee's causes of action 3,

4, and 9 is DENIED.

IT IS FURTHER ORDERED that E&Y and EYCF's motion to stay this adversary proceeding pending the completion of the arbitration process is GRANTED as to the Trustee's causes of action 1, 2, 5, 6, 7, 8, 10, and 11. The motion to stay as to the Trustee's causes of action 3, 4, and 9 is DENIED until the close of discovery.

Pursuant to the parties' stipulation, E&Y and EYCF's answer is due 30 days from the entry of this order. *See* Dckt. No. 6 (February 8, 2007). With the entry of this order, that deadline is now set. E&Y and EYCF's answers are due as and when stipulated, and unless the parties stipulate otherwise, discovery will proceed in the usual manner forthwith.

Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 24th day of May, 2007.