# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

In the matter of:                              )
                                               )     Adversary Proceeding
FRIEDMAN'S, INC., et al.,                      )
(Chapter 11 Case Number 05-40129)              )     Number 07-4043
                                               )
            *Debtor*                           )
                                               )
                                               )
                                               )
ALAN COHEN AS TRUSTEE OF THE                   )
FRIEDMAN'S CREDITOR TRUST                      )
                                               )
            *Plaintiff*                        )
                                               )
                                               )
v.                                             )
                                               )
ERNST & YOUNG, LLP,                            )
ERNST & YOUNG CORPORATE                        )
FINANCE, LLC (n/k/a Guiliani                   )
Capital Advisors, LLC), and                    )
WEDBUSH MORGAN SECURITIES,                     )
INC.                                           )
                                               )
            *Defendants*                       )

FILED
at 3 O'clock & 16 min P M
Date 6/1/07
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia

## MEMORANDUM AND ORDER
## ON THE MOTION OF WEDBUSH MORGAN SECURITIES, INC.
## TO COMPEL ARBITRATION AND STAY ADVERSARY PROCEEDING

The Plaintiff, as Trustee for the Friedman's Creditor Trust (hereinafter, the Trustee), filed this adversary proceeding against the Defendants on January 12, 2007. *See* Dckt. No. 1 (January 12, 2007). Defendant Wedbush Morgan Securities, Inc. (Wedbush)

AO 72A
(Rev. 8/82)

filed a motion to compel arbitration of the Trustee's claims and to stay this adversary. See Dckt. No. 18 (February 27, 2007). The Trustee filed a response opposing Wedbush's motion. See Dckt. No. 32 (March 30, 2007). Wedbush submitted a timely response to the Trustee's arguments. See Dckt. No. 39 (April 10, 2007). A hearing on this matter was held on April 23, 2007. After reviewing the factual allegations and legal arguments presented by the parties, I make the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FINDINGS OF FACT

### A. The Friedman's Creditor Trust

The Debtors' plan of reorganization (the Plan) was confirmed on November 23, 2005, and became effective on December 9, 2005. See Case No. 05-40129, Dckt. No. 1338 (November 23, 2005). Under the Plan, the Trustee is charged with prosecuting and liquidating on behalf of Class 5 General Unsecured Creditors various causes of action that had been transferred from the Debtors' bankruptcy estate to the Friedman's Creditor Trust. See Id., Ex. A, ¶ 11.3(c) (November 23, 2005). It is in this capacity that the Trustee has brought the present adversary proceeding against Wedbush.

### B. The Debtors' Pre-Petition Relationship with Wedbush

Wedbush is an investment banking and independent brokerage firm. See Dckt. No. 1, p. 13 (January 12, 2007). As part of its business, Wedbush is engaged in the valuation of businesses and their securities in connection with mergers and acquisitions,

negotiated underwritings, private placements, secondary distributions of listed and unlisted securities, and valuations for corporate and other purposes. *See* Id., pgs. 13-14. On June 10, 2002, Friedman's entered into an agreement with Wedbush for its services. *See* Dckt. No. 18, Declaration of Stephen Young, Ex. A (February 27, 2007). Included in that agreement was the following provision:

> Any claim or dispute arising out of this Agreement or the alleged breach thereof shall be submitted by the parties to binding and non-appealable arbitration before the National Association of Securities Dealers to be held in New York, New York, and in accordance with the rules of the National Association of Securities Dealers.

*See* Id.

### C. The Trustee's Adversary Proceeding against Wedbush

Wedbush provided a "fairness opinion" to Friedman's in connection with its August 2002 investment of $85 million in Crescent Jeweler's, Inc. (the Crescent Investment), another jewelry retailer that was owned and controlled by some insiders of Friedman's. *See* Dckt. No. 1, p. 8 (January 12, 2007). It is this fairness opinion that forms the basis of the Trustee's claims against Wedbush. The Trustee alleges that Wedbush's opinion was "replete with errors and flawed assumptions." *See* Id., p. 62. In failing in its duty to comply with the appropriate standards of care, Wedbush's opinion that the Crescent Investment was fair to Friedman's common stockholders was "knowingly, recklessly or negligently false and unreasonable." *See* Id., p. 66. Had Wedbush exercised the appropriate

standards of care in preparing the opinion, Friedman's board would not have approved the Crescent Investment, and Friedman's would have been spared the financially crippling effects of that course of action. *See* Id., p. 118. In connection with Wedbush's rendering of the fairness opinion, the Trustee asserts causes of action for negligence and negligent misrepresentation. *See* Id., pgs. 117-19.

### D. *Arguments of the Parties*

Wedbush argues that in asserting his claims in this adversary proceeding, the Trustee is bound by the arbitration clause in the June 10, 2002, agreement between Wedbush and Friedman's. *See* Dckt. No. 39, pgs. 2-3 (April 10, 2007). Wedbush contends that the Trustee does not dispute that there is a valid arbitration clause. *See* Id., p. 5. Wedbush relies on Whiting-Turner Contracting Co. v. Elec. Mach. Enterprises, Inc. (In re Elec. Mach. Enterprises, Inc.), 479 F.3d 791, 797 (11th Cir. 2007), which held that non-core claims "in general" must be sent to arbitration when they are subject to a valid arbitration clause. *See* Dckt. No. 39, p. 2 (April 10, 2007).

In response, the Trustee asks this Court to find an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code and to exercise its discretion to deny enforcement of the arbitration clause in the June 10, 2002, agreement. *See* Dckt. No. 32, p. 5 (March 30, 2007). The Trustee contends that the Code's interest in centralizing disputes and conserving assets for the benefit of creditors inherently conflicts with the arbitration of his claims against Wedbush. *See* Id. Furthermore, because this Court granted

in part the motion of co-Defendants Ernst & Young LLP (E&Y) and Ernst & Young Corporate Finance, LLC (EYCF) to compel arbitration, the arbitration of the Trustee's claims against Wedbush could result in inefficient piecemeal litigation of this adversary proceeding amongst this court and three arbitration panels. See Dckt. No. 45 (May 24, 2007). Such a decision, the Trustee argues, would also give rise to the possibility of inconsistent results. See Dckt. No. 32, pgs. 7-8 (March 30, 2007).

At the April 23, 2007, hearing, the parties informed the Court that they had reached two stipulations. First, the terms of the June 10, 2002, agreement are not in dispute, and second, the Trustee's claims against Wedbush do not involve any core issues.

## CONCLUSIONS OF LAW

*A.*

Under the Federal Arbitration Act, an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When faced with a request for the arbitration of a cause of action, federal courts are to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

In Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the United States Supreme Court stated the following:

> The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes.
>
> Id. at 226-27 (citations and quotations omitted).

In what has become known as the McMahon test, the party seeking to avoid enforcement of an otherwise applicable arbitration provision must demonstrate that there is an "irreconcilable conflict" between the Federal Arbitration Act and the underlying purpose of the other federal statute in question. Id. at 239. The Federal Arbitration Act is evidence of a strong federal policy favoring the enforcement of arbitration agreements. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The party opposing arbitration bears the burden of demonstrating that Congress did not intend to waive judicial remedies for the particular rights at issue. McMahon, 482 U.S. at 227.

The Eleventh Circuit recently applied the McMahon test in a bankruptcy case in Whiting-Turner. In that case, a Chapter 11 debtor in possession sued seeking turnover of money owed to the debtor. The defendant moved to compel arbitration pursuant to its pre-petition agreement with the debtor. The Eleventh Circuit held that "[i]n general,

bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding." 479 F.3d at 796. In analyzing the debtor's claim, the Eleventh Circuit concluded that it was a non-core proceeding and therefore subject to arbitration. Id. at 798. Alternatively, the court also concluded that even if the debtor's claim was a core proceeding, there was no evidence of an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code. Id. at 798-99. Only "if the bankruptcy court actually makes a sufficient finding that enforcing an arbitration agreement would inherently conflict with the Bankruptcy Code does it have the discretion to deny enforcement of the arbitration agreement." Id. at 799.

B.

Whiting-Turner applied the McMahon inherent conflict test to core claims.[1] It did not apply the McMahon test to the debtor's non-core claim, however, and its statement that the non-core claim was "subject to arbitration" suggests that bankruptcy courts categorically lack the discretion to deny enforcement of arbitration clauses with regards to non-core claims. Id. at 796-97. Because the Trustee and Wedbush agree that the Trustee's claims do not involve core issues, this interpretation of Whiting-Turner would lead to the conclusion that I lack any discretion to deny enforcement of the June 10, 2002, agreement,

---

[1] Under McMahon, a court may refuse to enforce an arbitration clause if permitted by the text or legislative history of the federal statute in question. The Eleventh Circuit has concluded, however, that there is no evidence in the text or legislative history of the Bankruptcy Code indicating Congress's intent to except the Code from the Federal Arbitration Act. Whiting-Turner, 479 F.3d at 796. Therefore, the only factor of the McMahon test to be applied in connection with bankruptcy is whether there is an inherent conflict.

the terms of which are not in dispute.[2]

The Trustee proposes an alternative and less categorical interpretation of Whiting-Turner, contending that its use of the phrase "in general" when discussing non-core claims leaves discretion in the trial court in unusual and exceptional cases to deny enforcement of an otherwise applicable arbitration clause. *See* Dckt. No. 32, p. 7 (March 30, 2007). Because I find the Eleventh Circuit's rationale clear, I disagree with this interpretation of Whiting-Turner. In the final analysis, Whiting-Turner held the non-core issue to be nonarbitrable and only utilized the McMahon analysis with reference to core matters. *See* 479 F.3d at 798-99. However, even assuming that the Trustee's interpretation is correct, I conclude that there is no inherent conflict between arbitrating the Trustee's claims against Wedbush and the purposes of the Bankruptcy Code, and that the McMahon exception is not satisfied.

I reach this conclusion for three primary reasons. First, the United States Supreme Court has determined that in cases involving both arbitrable and nonarbitrable claims, a court is to enforce an agreement between the parties and "not substitute its own views of economy and efficiency for those of Congress." Dean Witter Reynolds, Inc. v.

---

[2] The Trustee has not raised any argument concerning the applicability of the arbitration provision in the June 10, 2002, agreement to his claims against Wedbush. Because the Trustee is asserting causes of action derived from the Debtors rather than creditor claims derived from the Bankruptcy Code, I conclude that the Trustee is standing in the shoes of the Debtors in bringing these claims against Wedbush, and he is bound to the provisions of the June 10, 2002, agreement between Friedman's and Wedbush. *See* Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1154 (3d Cir. 1989) (stating that a Chapter 11 trustee asserting claims derived from the debtor was a party to the debtor's pre-petition arbitration agreement and therefore subject to arbitration).

Byrd, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (quotations omitted). Rather, the arbitrable claims are to be sent to arbitration, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." Id.; *see also* Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1117 (11th Cir. 2001) (citing Dean Witter and refusing to endorse the district court's suggestion that arbitration was inappropriate when it would inefficiently result in bifurcated proceedings). Courts have reached similar conclusions in the arena of bankruptcy as well. *See, e.g.*, In re Mor-Ben Ins. Markets Corp., 73 B.R. 644, 647-48 (B.A.P. 9th Cir. 1987) (requiring the arbitration of claims concerning amounts due to the debtor despite the possibility that such an action would result in fragmented litigation in numerous arbitration proceedings); Bezanson v. Consol. Constructors & Builders (In re P&G Drywall and Acoustical Corp.), 156 B.R. 704, 706 (Bankr. D. Me. 1993) ("[R]eferral to arbitration is justified notwithstanding the fact that it may result in piecemeal litigation."); In re Chorus Data Sys., Inc., 122 B.R. 845, 852 (Bankr. D.N.H. 1990) ("The Supreme Court has made it unmistakably clear that such qualitative judgments about the desirability of arbitration procedures are not a proper factor in deciding whether to exercise discretion to refuse to enforce an arbitration provision.").

This Court's ruling on the motion of E&Y and EYCF to compel arbitration does not change this result. *See* Dckt. No. 45 (May 24, 2007). That motion was granted in part, sending eight of the Trustee's eleven claims against E&Y and EYCF to arbitration. As to the remaining three claims against E&Y, the motion to compel was denied. In light of that order, compelling the Trustee to arbitrate his claims against Wedbush in compliance with the

June 10, 2002, agreement will involve yet another forum in the adjudication of this adversary proceeding. However, I still conclude that this result alone is insufficient to demonstrate that there is an inherent conflict between arbitration and the purposes of the Bankruptcy Code such that the McMahon test is satisfied. See Chorus Data, 122 B.R. at 852 ("[T]he fact that arbitration may not be as 'efficient' or as 'expeditious' has been held not to *per se* justify refusal to enforce an arbitration clause even in the bankruptcy context.").

Second, what must be shown is not merely bifurcation and possible inefficiency but some fundamental conflict with the central purposes of the Code. Whiting-Turner stated that a traditional purpose of the bankruptcy court is "modifying the rights of creditors who make claims against the bankruptcy debtor's estate." 479 F.3d at 798; *see also* Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (stating that a central purpose of the Bankruptcy Code includes "a procedure by which certain insolvent debtors can reorder their affairs" and "make peace with their creditors"); Begier v. Internal Revenue Service, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code."). There is no evidence that allowing the arbitration of the Trustee's claims against Wedbush will have any impact on this Court's ability to carry out the central purposes of the Bankruptcy Code in this case because they have already been accomplished: the Debtors' Plan was confirmed; creditors' rights have been modified; the Debtors' businesses have been reorganized; and equitable distributions to various classes of creditors have been assured. *See* Case No. 05-40129, Dckt. No. 1338 (November 23, 2005). Permitting the arbitration of the Trustee's

claims against Wedbush cannot affect the Debtors' reorganization, impact the relative rights of creditors, or unravel any fundamental purpose of the Code.

The absence of any conflict with a central purpose of the Code in this case is best illustrated by the few, narrow fact patterns where an inherent conflict was found. In Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co., L.L.C.), 403 F.3d 164, 170 (4th Cir. 2005), the court determined that arbitration of the issue of whether a $10 million advance was to be treated as either debt or equity "would have substantially interfered with the debtor's efforts to reorganize." The court found that resolution of this issue was central to the formulation of the debtor's plan of reorganization and that the bankruptcy court could ensure an expedited resolution of that pivotal issue. Id. In In re U.S. Lines, Inc., 197 F.3d 631 (2d Cir. 1999), the court concluded that it was necessary to resolve pre-petition insurance claims in the bankruptcy court because only in that forum could the debtor avoid compliance with a pay-first provision, the enforcement of which could have resulted in some creditors being overpaid and others underpaid. Since litigation in the non-bankruptcy forum could have resulted in an inequitable distribution to creditors, the court found an inherent conflict with the Bankruptcy Code. Id. at 640-41. In Gandy v. Gandy (In re Gandy), 299 F.3d 489 (5th Cir. 2002), the court determined that the pre-confirmation arbitration of the debtor's claims would conflict with the purposes of the Code because the bankruptcy causes of action predominated, and only the bankruptcy court could exercise extraterritorial jurisdiction over asserts transferred to a foreign country. *See also* In re Nat'l Gypsum Co., 118 F.3d 1056, 1070-71 (5th Cir. 1997) (refusing to compel arbitration after finding that the contested action

concerned the bankruptcy court's ability to construe its own order, was restricted strictly to bankruptcy issues under 11 U.S.C. § 524, and that to turn the enforcement of bankruptcy court orders over to arbitrators would conflict with the Code).

Third, the Trustee has not presented any evidence that his claims against Wedbush for negligence and negligent misrepresentation are so unique or complex such that they are beyond the competency of an arbitration forum. Indeed, these are not unique claims, and the Trustee is not requesting enforcement of an order of this Court. It is not at all evident that these are the types of claims that require special insight or expertise or that qualified arbitrators lack the ability and competency to adjudicate these claims. *See* MBNA America Bank, N.A. v. Hill, 436 F.3d 104, 110 (2d Cir. 2006) (finding that a bankruptcy court was not uniquely able to interpret and enforce a claim under former 11 U.S.C. § 362(h) such that arbitration of the claim would inherently conflict with the Bankruptcy Code). Indeed, these are straight-forward claims for negligence and negligent misrepresentation arising under non-bankruptcy law.

Therefore, even when the Trustee's claims are examined under the McMahon test, I conclude that the facts of this case do not reveal an inherent conflict between arbitration of those claims and the purposes of the Bankruptcy Code. As a result, I do not have any discretion to deny enforcement of this otherwise applicable and valid arbitration agreement. As a result, Wedbush's motion to compel arbitration of the Trustee's claims against it will be granted.

C.

Wedbush also requests a stay of this adversary proceeding against it pending the completion of the arbitration process. *See* Dckt. No. 18 (February 27, 2007). Under the Federal Arbitration Act, a court shall stay an action "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration" under a valid arbitration clause. 9 U.S.C. § 3. For claims subject to arbitration, a stay is mandatory. *See* <u>Klay v. All Defendants</u>, 389 F.3d 1191, 1204 (11th Cir. 2004) ("For arbitrable issues, the language of [9 U.S.C. § 3] indicates that the stay is mandatory."). Because the Trustee's claims against it are arbitrable, Wedbush's motion to stay this adversary proceeding against it pending the completion of the arbitration process will be granted.

### ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that Wedbush's motion to compel arbitration of the Trustee's claims against it is GRANTED.

IT IS FURTHER ORDERED that Wedbush's motion to stay this adversary proceeding against it pending the completion of the arbitration process is GRANTED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 1st day of June, 2007.